# EXHIBIT A

**EXHIBIT "A"**

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| PENSON FINANCIAL SERVICES, INC., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3-07-CV-0372-B |
| | § | |
| MISR SECURITIES INTERNATIONAL, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

## AFFIDAVIT OF KIMBERLY MILLER
## IN SUPPORT OF PENSON FINANCIAL SERVICES, INC.'S
## MOTION TO COMPEL ARBITRATION

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Kimberly Miller, who, being by me duly sworn, deposes and states as follows:

1.     My name is Kimberly Miller.  I am employed by Penson Financial Services, Inc. ("Penson") as a Compliance Specialist and Records Production Manager.  By reason of my position I am authorized and qualified to make this Declaration.  My responsibilities include oversight of the records production department and other compliance related tasks.  As a Compliance Specialist, I am familiar with Penson's recordkeeping practices, including Penson's procedures relating to the maintenance of electronic records kept in the ordinary course of business.  In addition, I am familiar with the contents of the records maintained by Penson, including, but not limited to, the contents of Penson's account opening documents and agreements, account statements and trade blotters.

2.      Penson is a Delaware corporation with its principal place of business in Dallas, Texas.  Penson is a registered broker-dealer and a member firm of the National Association of Securities Dealers, Inc. ("NASD") and the New York Stock Exchange, Inc. ("NYSE").

3.      I am one of the custodians of the records of Penson.  Attached hereto as Exhibit "1" is a true and correct copy of the Customer Account Agreement between MISR and Penson.  Attached as Exhibit "2" is a true and correct copy of the "Corporate Account" agreement that the President of MISR, Mr. Hussein, signed.  Attached as Exhibit "3" is a true and correct copy of the Customer Margin and Short Account Agreement between MISR and Penson.

4.      Exhibits "1", "2", and "3" are Penson records which are kept by Penson in the regular course of business.  At the time Exhibits "1", "2", and "3" were entered, it was Penson's regular course of business for a Penson employee to record and maintain such account documents among Penson's business records.  Exhibits "1", "2", and "3" were each recorded in Penson's business records at or near the time they were entered, or reasonably soon thereafter.  Exhibits "1", "2", and "3" are exact duplicates of the original document.

5.      MISR agreed to arbitration in the Customer Account Agreement and in the Customer Margin and Short Account Agreement.  The Customer Account Agreement that MISR and Penson entered into states:

> BY SIGNING BELOW, THE UNDERSIGNED AGREES TO ALL TERMS OF THE CUSTOMER AGREEMENT PRINTED ON THIS SIDE AND THE REVERSE SIDE OF THIS DOCUMENT.  THE UNDERSIGNED ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT, THE INFORMATION BROCHURE PREPARED BY PENSON FINANCIAL SERVICES, INC., AND PENSON'S PRIVACY POLICY.  THE UNDERSIGNED CERTIFIES THAT THE UNDERSIGNED HAS READ AND UNDERSTANDS ALL PROVISIONS OF THIS AGREEMENT.  THIS AGREEMENT BENEFITS PENSON FINANCIAL SERVICES, INC., INTRODUCING BROKERS FOR WHICH IT CLEARS AND PERSONS RELATED TO EACH OF THE FOREGOING. THE REVERSE SIDE OF THIS AGREEMENT, PARAGRAPH 8, CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE.

(*See* Ex. 1)

6.     Paragraph 8, entitled "Arbitration Agreement," is prefaced by the following

language:

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN
CONJUNCTION WITH THESE DISCLOSURES:

    a.    ALL PARTIES TO THIS AGREEMENT ARE GIVING
        UP THE RIGHT TO SUE EACH OTHER IN COURT...

    b.    ARBITRATION AWARDS ARE GENERALLY FINAL
        AND BINDING...

(*See id.*) Paragraph 8 goes on to broadly state:

ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN
THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER OR
THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS,
OFFICERS OR CONTROL PERSON OF YOU OR THE INTRODUCING
BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH
RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS
AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE
RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY
ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S
BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE
CONDUCTED PURSUANT TO THE CODE OF ARBITRATION
PROCEDURE OF THE NASD.

(*See id.* ¶ 8.)

7.     The Customer Margin and Short Account Agreement that MISR and Penson

entered into also includes an arbitration clause. (*See* Ex. 3)  This agreement states:

BY SIGNING BELOW, THE UNDERSIGNED AGREES TO ALL TERMS OF
THE MARGIN AND SHORT ACCOUNT AGREEMENT PRINTED ON THIS
SIDE AND THE REVERSE SIDE OF THIS DOCUMENT.  THE REVERSE
SIDE OF THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION
CLAUSE IN PARAGRAPH 10.

(*See id.*) Paragraph 10 is titled "Arbitration Agreement" and begins with:

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN
CONJUNCTION WITH THESE DISCLOSURES:

a.   ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT...

b.   ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING...

(*See id.*) The Paragraph also states:

ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSON OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NASD.

Further affiant sayeth not.

_____
Kimberly Miller

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this _4th_

day of June 2007, to certify which witness my hand and seal of office.

VICKI MYERS
Notary Public, State of Texas
My Commission Expires
September 19, 2010

_____
Notary Public, State of Texas

PENSON FINANCIAL SERVICES, INC.
AND/OR BROKER DEALERS
FOR WHICH IT CLEARS

CUSTOMER ACCOUNT AGREEMENT

| Account Number: | Full Name and Address on Account | Social Security Number/Tax I.D. |
|---|---|---|
| | MISR  INTERNATIONAL  R  SECURITIES<br>9 EL FAWATEM  STR.<br>ALEXANDRIA  EGYPT | N/A<br>This must match the first named person on this account.<br>Foreign Account<br>U.S Available |

CERTIFICATION OF TAXPAYER ID NUMBER (SUBSTITUTE W-9)

Check appropriate box: ☐ Individual/Sole proprietor  ☒ Corporation  ☐ Partnership  ☐ Other _____

Under penalty of perjury I certify that:

(1) The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me) and
(2) I am not subject to backup withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property, contributions to an individual retirement account (IRA), and payments other than interest and dividends).
(3) I am a U.S. person (including a U.S. resident alien).

Certification Instructions — You must cross out (item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because of IRS under reporting of interest.

DISCLOSURE OF NAME/ADDRESS ON SECURITIES YOU OWN

Under rule 14b-1(c) of the Securities Exchange Act, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects. Please check below if you do not want your ownership disclosed.

☐ I object to the disclosure of such information

AUTHORIZATION TO EARN INTEREST ON FUNDS AWAITING INVESTMENT

This is to confirm my intention to reinvest cash credit balances held by you in my name, and I further confirm that this cash credit balance is being maintained with you solely for the purpose of reinvestment. I understand that cash balances of up to $100,000 are protected by the Securities Investor Protection Corporation (SIPC), but that SIPC coverage is not available for funds maintained solely for the purpose of earning interest.

BY SIGNING BELOW, THE UNDERSIGNED AGREES TO ALL TERMS OF THE CUSTOMER AGREEMENT PRINTED ON THIS SIDE AND THE REVERSE OF THIS DOCUMENT. THE UNDERSIGNED ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT, THAT THE UNDERSIGNED HAS READ AND UNDERSTANDS ALL FINANCIAL SERVICES, INC. AND PENSON'S PRIVACY POLICY. THE UNDERSIGNED CERTIFIES THAT THE UNDERSIGNED IS INTRODUCING BROKERS FOR WHICH IT CLEARS AND PROVISIONS OF THE AGREEMENT. THIS AGREEMENT BENEFITS PENSON FINANCIAL SERVICES, INC., INTRODUCING BROKERS FOR WHICH IT CLEARS AND PERSONS RELATED TO EACH OF THE FOREGOING. THE REVERSE SIDE OF THIS AGREEMENT, PARAGRAPH 8, CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE.

Important Information about procedures for opening a new account: To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means to you: when you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

| | | |
|---|---|---|
| Date of Delivery of Privacy Policy: _____ | For use by entity accounts only (i.e. corporations, partnerships, trusts): | |
| For Use by Individuals, including Joint Accounts: | Is this account for a foreign bank?  ☐ Yes  ☒ No — If Yes, please list | |
| | Agent for services of process _____ | |
| Signature: _____ | Is this account for a foreign shell bank?  ☐ Yes  ☒ No. | |
| Print Name: _____ | Does this firm offer services to a foreign shell bank?  ☐ Yes  ☒ No | |
| Signature (Second Party, If Joint Account): _____ | If you answered yes to any of the above questions, Corporation will need to complete Certification Regarding Correspondent Accounts. | |
| Print Name: _____ | Signature: _[signature]_ | |
| Date: _____ | Print Name: MOHAMED  HUSSEIN | |
| | Title: PRESIDENT  Date: 2/15/06 | |

1. Applicable Rules and Regulations. All transactions shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market and the clearing house, if any, upon which such transactions are executed, except as otherwise specifically provided in this Agreement.

2. Definitions. "Introducing broker" means any brokerage firm which introduces securities transactions on behalf of the undersigned, which transactions are cleared through you, whether now or hereafter arising. "Securities and other property" shall include, but shall not be limited to, money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "your" refers to Penson Financial Services, Inc.

3. Remedies/Security Interest. Whenever in your discretion you consider it necessary for your protection, or for the protection of the undersigned's introducing firm or in the event of, but not limited to, (i) any breach by the undersigned of this or any other agreement with you or (ii) the undersigned's failure to pay for securities and other property purchased or to deliver securities and other property sold, you may sell any or all securities and other property held in any of the undersigned's accounts (either individually or jointly with others), cancel or complete any open orders for the purchase or sale of any securities and other property, and/or borrow or buy-in any securities and other property required to make delivery against any sale, including a short sale, effected for the undersigned, all without demand for deposit of collateral, other notice of sale or purchase, or other notice or advertisement, each of which is expressly waived by the undersigned, and/or you may require the undersigned to deposit cash or adequate collateral to the undersigned's account prior to any settlement date in order to assure the performance or payment of any open contractual commitments and/or unsettled transactions. Any and all securities and other property belonging to the undersigned or in which the undersigned may have an interest held by you or carried in any of the undersigned's accounts with you (either individually or jointly with others) shall be subject to a first and prior security interest and lien for the discharge of the undersigned's obligations to you, wherever or however arising and without regard to whether or not you have made advances with respect to such securities and other property, and you are hereby authorized to sell and/or purchase.

Penson CAO – 3/2005                                                                                       [Page 1]

EXHIBIT  1

# PENSON FINANCIAL SERVICES, INC.
## AND/OR BROKER DEALERS
## FOR WHICH IT CLEARS

### CUSTOMER ACCOUNT AGREEMENT

| Account Number: | Full Name and Address on Account | Social Security Number / TIN |
|---|---|---|
| | | **The TIN provided must match the name given to avoid backup withholding.**<br><br>☐ **Exempt from Withholding** |

### CERTIFICATION OF TAXPAYER ID NUMBER (SUBSTITUTE W-9)

Check appropriate box:  ☐ Individual/Sole proprietor  ☐ Corporation  ☐ Partnership  ☐ Other _____

Under penalty of perjury I certify that:

(1) The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me) **and**
(2) I am not subject to backup withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property, contributions to an individual retirement account (IRA), and payments other than interest and dividends).
(3) I am a U.S. person (including a U.S. resident alien).

**Certification Instructions**—You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

### DISCLOSURE OF NAME/ADDRESS ON SECURITIES YOU OWN

Under rule 14b-1(c) of the Securities Exchange Act, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects.  Please check below if you do not want your ownership disclosed.

_____ I object to the disclosure of such information

### AUTHORIZATION TO EARN INTEREST ON FUNDS AWAITING INVESTMENT

This is to confirm my intention to reinvest cash credit balances held by you in my name, and I further confirm that this cash credit balance is being maintained with you solely for the purpose of reinvestment. I understand that cash balances of up to $100,000 are protected by the Securities Investor Protection Corporation (SIPC), but that SIPC coverage is not available for funds maintained solely for the purpose of earning interest.

**BY SIGNING BELOW, THE UNDERSIGNED AGREES TO ALL TERMS OF THE CUSTOMER AGREEMENT PRINTED ON THIS SIDE AND THE REVERSE OF THIS DOCUMENT.  THE UNDERSIGNED ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT, THE INFORMATION BROCHURE PREPARED BY PENSON FINANCIAL SERVICES, INC., AND PENSON'S PRIVACY POLICY.  THE UNDERSIGNED CERTIFIES THAT THE UNDERSIGNED HAS READ AND UNDERSTANDS ALL PROVISIONS OF THIS AGREEMENT.  THIS AGREEMENT BENEFITS PENSON FINANCIAL SERVICES, INC., INTRODUCING BROKERS FOR WHICH IT CLEARS AND PERSONS RELATED TO EACH OF THE FOREGOING.  THE REVERSE SIDE OF THIS AGREEMENT, PARAGRAPH 8, CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE.**

**Important information about procedures for opening a new account:**  To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.  **What this means to you:** when you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you.  We may also ask to see your driver's license or other identifying documents.

Date of Delivery of Privacy Policy: _____

**For Use by Individuals, including joint accounts:**

Signature: _____

Print Name: _____

Signature (Second Party, If Joint Account):

Print Name: _____

Date: _____

**For use by entity accounts only (i.e. corporations, partnerships, trusts):**

Is this account for a foreign bank?  ☐ Yes   ☐ No – If Yes, please list

Agent for service of process: _____

Is this account for a foreign shell bank?  ☐ Yes   ☐ No.

Does this firm offer services to a foreign shell bank?  ☐ Yes   ☐ No

**If you answered yes to any of the above questions, Corporation will need to complete Certification Regarding Correspondent Accounts.**

Signature: _____

Print Name: _____

Title: _____   Date: _____

**1. Applicable Rules and Regulations.**  All transactions shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market and its clearing house, if any, upon which such transactions are executed, except as otherwise specifically provided in this Agreement.
**2. Definitions.**  **"Introducing broker"** means any brokerage firm which introduces securities transactions on behalf of the undersigned, which transactions are cleared through you, whether one or more.  **"Obligations"** means all indebtedness, debit balances, liabilities or other obligations of any kind of the undersigned to you, whether now existing or hereafter arising.  **"Securities and other property"** shall include, but shall not be limited to, money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery.  **"You"** or **"your"** refers to Penson Financial Services, Inc.
**3. Breach; Security Interest.**  Whenever in your discretion you consider it necessary for your protection, for the protection of the undersigned's introducing firm or in the event of, but not limited to; (i) any breach by the undersigned of this or any other agreement with you or (ii) the undersigned's failure to pay for securities and other property purchased or to deliver securities and other property sold, you may sell any or all securities and other property held in any of the undersigned's accounts (either individually or jointly with others), cancel or complete any open orders for the purchase or sale of any securities and other property, and/or borrow or buy-in any securities and other property required to make delivery against any sale, including a short sale, effected for the undersigned, all without demand for deposit of collateral, other notice of sale or purchase, or other notice or advertisement, each of which is expressly waived by the undersigned, and/or you may require the undersigned to deposit cash or adequate collateral to the undersigned's account prior to any settlement date in order to assure the performance or payment of any open contractual commitments and/or unsettled transactions.  Any and all securities and other property belonging to the undersigned or in which the undersigned may have an interest held by you or carried in any of the undersigned's accounts with you (either individually or jointly with others) shall be subject to a first and prior security interest and lien for the discharge of the undersigned's obligations to you, wherever or however arising and without regard to whether or not you have made advances with respect to such securities and other property, and you are hereby authorized to sell and/or purchase any and all securities and other property in any of the undersigned's accounts, and/or to transfer any such securities and other property among any of the undersigned's accounts to the fullest extent of the

law and without notice where allowed. The costs and expenses of collection of the debit balance and any unpaid deficiency in the accounts of the undersigned with you, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by you shall be payable to you by the undersigned.

**4. Cancellation.** If authorized in your discretion, should you for any reason whatsoever deem it necessary for your protection, without notice, to cancel any outstanding order, to close out the undersigned's account, in whole or in part, or to close out any commitment made on behalf of the undersigned.

**5. Payment of Indebtedness Upon Demand.** The undersigned shall at all times be liable for the payment upon demand of any obligations owing from the undersigned to you, and the undersigned shall be liable to you for any deficiency remaining in any such accounts in the event of the liquidation thereof (as contemplated in Paragraph 3 of this Agreement or otherwise), in whole or in part, by you or by the undersigned; and the undersigned shall make payment of such obligations upon demand. If Customer also holds a futures account with Penson Financial Futures, Inc. ("PFFI"), Customer hereby authorizes Penson, without prior notice, to transfer from any account held with Penson to any account held with PFFI, any assets that PFFI represents to Penson are reasonably required to avoid the calling of margins for such PFFI account or the payment of any obligations owed Penson by Customer.  Customer also authorizes Penson to request from PFFI assets held by PFFI that in Penson's judgment may be reasonably required to avoid the calling of margins for a Penson account or the payment of any obligations owed Penson by Customer.

**6. Accounts Carried as Clearing Broker.** The undersigned understands that you are carrying the accounts of the undersigned as clearing broker by arrangement with the undersigned's introducing broker through whose courtesy the account of the undersigned has been introduced to you. Until receipt from the undersigned of written notice to the contrary, you may accept from and rely upon the undersigned's introducing broker for (a) orders for the purchase or sale in said account of securities and other property, and (b) any other instructions concerning the undersigned's accounts. The undersigned represents that the undersigned understands that you act only to clear trades introduced by the undersigned's introducing broker and to effect other back office functions for the undersigned's introducing broker. The undersigned confirms to you that the undersigned is relying for any advice concerning the undersigned's accounts solely on the undersigned's introducing broker. The undersigned understands that all representatives, employees and other agents with whom the undersigned communicates concerning the undersigned's account are agents of the introducing broker, and not your representatives, employees or other agents. The undersigned understands that you are not a principal of or partner with, and do not control in any way, the introducing broker or its representatives, employees or other agents. The undersigned understands that you will not review the undersigned's accounts and will have no responsibility for trades made in the undersigned's accounts. You shall not be responsible or liable for any acts or omissions of the introducing broker or its representatives, employees or other agents. Notwithstanding the foregoing, in the event that the undersigned initiates a claim against you in your capacity as clearing broker and does not prevail, the undersigned shall be responsible for the costs and expenses associated with your defense of such claim.

**7. Communications.** You may send communications to the undersigned at the undersigned's address or at such other address as the undersigned may hereafter give you in writing, and all communications so sent, whether by mail, telegraph, or otherwise, shall be deemed given to the undersigned personally, whether actually received or not. Reports of execution of orders and statements of accounts of the undersigned shall be conclusive if not objected to in writing to you, the former within five (5) days and the latter within ten (10) days, after forwarding by you.

**THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:**

   a.  **ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;**
   b.  **ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED;**
   c.  **THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;**
   d.  **THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.**
   e.  **THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.**
   f.  **THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION.  IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.**
   g.  **THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.**

**8. ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NASD.  ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**9. Representations.** The undersigned represents that the undersigned is of majority age, that the undersigned is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business dealing either as broker or as principal in securities, bills of exchange, acceptances or other forms of commercial paper.  If the undersigned is a corporation, partnership, trust or other entity, the undersigned represents that its governing instruments permit this Agreement, that this Agreement has been authorized by all applicable persons and that the undersigned signatory is authorized to bind the undersigned.  The undersigned represents that the undersigned shall comply with all applicable laws, rules and regulations in connection with the undersigned's account.  The undersigned further represents that no one except the undersigned has an interest in the account or accounts of the undersigned with you.

**10. Joint Accounts.** If the undersigned shall consist of more than one person, the undersigned's obligations under this Agreement shall be joint and several.  References to the "undersigned" shall include each of the undersigned.  You may rely on transfer or other instructions from any one of the undersigned in a joint account, and such instructions shall be binding on each of the undersigned.  You may deliver securities or other property to, and send confirmations; notices, statements and communications of every kind, to any one of the undersigned, and such action shall be binding on each of the undersigned. Notwithstanding the foregoing, you are authorized in your discretion to require joint action by the joint tenants with respect to any matter concerning the joint account, including but not limited to the giving or cancellation of orders and the withdrawal of money, securities, futures or commodities.

**11. Other Agreements.** If the undersigned trades on margin or in short accounts, the undersigned agrees to be bound by the terms of your **Customer Margin and Short Account Agreement**.  If the undersigned trades any options, the undersigned agrees to be bound by the terms of your **Customer Option Agreement**. The undersigned understands that copies of these agreements are available from you and, to the extent applicable, are incorporated by reference herein.  The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between you and the undersigned.

**12. Data Not Guaranteed.** The undersigned expressly agrees that any data or online reports is provided to the undersigned without warranties of any kind, express or implied, including but not limited to, the implied warranties of merchantability, fitness of a particular purpose or non-infringement.  The undersigned acknowledges that the information contained in any reports provided by you is obtained from sources believed to be reliable but is not guaranteed as to its accuracy of completeness.  Such information could include technical or other inaccuracies, errors or omissions.  In no event shall you or any of your affiliates be liable to the undersigned or any third party for the accuracy, timeliness, or completeness of any information made available to the undersigned or for any decision made or taken by the undersigned in reliance upon such information.  In no event shall you or your affiliated entities be liable for any special incidental, indirect or consequential damages whatsoever, including, without limitation, those resulting from loss of use, data or profits, whether or not advised of the possibility of damages, and on any theory of liability, arising out of or in connection with the use of any reports provided by you or with the delay or inability to use such reports.

**13. Order Flow Disclosure.** Depending on the security traded and absent specific direction from the undersigned, stock orders are routed via an electronic system to a listed, NASDAQ or over the counter broker or dealer.  You or your correspondents may receive cash payments for routing such orders to specific brokers or dealers.  Because these agents are market makers, they carry inventory in their specific securities, allowing for price improvement to the undersigned by trading through their inventories.  Accordingly, the undersigned's orders will always be executed at the "best bid" or "best offer", or at a price superior to either, by virtue of the market maker's inventory positioning capabilities.

**14. Credit Check.** You are authorized, in your discretion, should you for any reason deem it necessary for your protection to request and obtain a consumer credit report for the undersigned.

**15. Miscellaneous.** If any provision of this Agreement is held to be unenforceable, it shall not affect any other provision of this Agreement.  The headings of each section of this Agreement are descriptive only and do not modify or qualify any provision of this Agreement.  This Agreement and its enforcement shall be governed by the laws of the state of Texas and shall cover individually and collectively all accounts which the undersigned has previously opened, now has open or may open or reopen with you, or any introducing broker, and any and all previous, current and future transactions in such accounts.  Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by your authorized representative.  This Agreement and all provisions shall inure to the benefit of you and your successors, whether by merger, consolidation or otherwise, your assigns, the undersigned's introducing broker, and all other persons specified in Paragraph 8.  You shall not be liable for losses caused directly or indirectly by any events beyond your reasonable control, including without limitation, government restrictions, exchange or market rulings, suspension of trading or unusually heavy trading in securities, a general change in economic, political or financial conditions, war or strikes.  You may transfer the accounts of the undersigned to your successors and assigns.  This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the undersigned.

Account No. _____

## PENSON FINANCIAL SERVICES, INCORPORATED
### AND/OR BROKER DEALERS FOR WHICH IT CLEARS

## CORPORATE ACCOUNT
### (AUTHORIZING TRADING IN SECURITIES FUTURES AND COMMODITIES
### AND PERMITTING MARGIN TRANSACTIONS, OPTIONS AND SHORT SALES)

I, _MOHAMED Hussein_ , being the Secretary of _HGE INT'L For Securit_ hereby certify that the annexed resolutions were duly adopted at a meeting of the Board of said Corporation, duly held on the _____ day of _____ at which a quorum of said Board of Directors was present and acting throughout, the following resolution, upon motions made, seconded and carried, was duly adopted and is now in full force and effect.

RESOLVED, That the President, Vice President, Treasurer, or _PRESIDENT_ or any one of such officers, be and are each hereby fully authorized and empowered for an on behalf of this Corporation to establish one or more accounts which may be margin accounts in order to purchase, invest in, acquire, sell (including short sales), assign, transfer, or otherwise dispose of any and all types and kinds of securities including but not limited to stocks, bonds, debentures, notes, rights, options, warrants, certificates of every kind and nature whatsoever, securities futures and commodities (collectively, "securities") and to enter into agreements, contracts and arrangements with respect to such security transactions whether or with securities related individuals or agents; to execute, sign or endorse on behalf of and in the same agreements and to affix the corporate seal on same. Notwithstanding the foregoing, you are authorized in your discretion to require action by any combination of corporate officers with respect to any matter concerning the corporate account, including but not limited to the giving or cancellation of orders and the withdrawal of money, securities, futures or commodities.

I further certify that the authority thereby conferred is not inconsistent with the Charter or Bylaws of this Corporation, and the following is a true and correct list of officers of this corporation as of the present date:

| President: | Name: MOHAMED Hussein | | Signature: | | |
|---|---|---|---|---|---|
| | SSN, Fed ID, Cedula, NIT# | | | ID # | |
| | ID Type: PASSPORT - EGYPT | Expiration Date: | | Issued By: EGYPT | Issue Date: |

| Vice President: | Name: MOHAMED FAROUK | | Signature: | | |
|---|---|---|---|---|---|
| | SSN, Fed ID, Cedula, NIT# | | | ID # | |
| | ID Type: PASSPORT | Expiration Date: | | Issued By: EGYPT | Issue Date: |

| Treasurer: | Name: | | Signature: | | |
|---|---|---|---|---|---|
| | SSN, Fed ID, Cedula, NIT# | | | ID # | |
| | ID Type: | Expiration Date: | | Issued By: | Issue Date: |

| Secretary: | Name: | | Signature: | | |
|---|---|---|---|---|---|
| | SSN, Fed ID, Cedula, NIT# | | | ID # | |
| | ID Type: | Expiration Date: | | Issued By: | Issue Date: |

Revised 10-03
Corporate Account Agreement

Page 1 of 2

EXHIBIT 2

You may rely upon any certification given in accordance with these resolutions, as continuing fully effective unless and until you receive due written notice of a change in or the rescission of the authority so evidenced herein. In the event of any change in the officer or powers of persons hereby empowered, the Secretary shall certify such changes to you in writing, which notification, when received, shall be adequate both to terminate the powers of the persons therefore authorized, and to empower the person thereby substituted.

The Corporation is formed to engage in the business of _Trading Securities_ and represents that it is not a commodity pool operator. The Corporation is incorporated in _____Egypt_____ and has its principal place of business in _ALEXANDRIA  EGYPT_
    Name of Jurisdiction.                                    Name of Jurisdiction

As defined in Section 5318(I) of Title 31 United States Code, the Corporation is a shell bank: YES_____ NO _✓_; or a business offering services to a shell bank: YES_____ NO _✓_; or a foreign bank: YES_____ NO_✓_. If so please complete and return the Certification Regarding Correspondents Accounts.

IN WITNESS WHEREOF, I have hereunto affixed my hand this _____15th_____ day of _FEB_, 20_06_

SEAL

_No Seal_                                        _MOHAMED HUSSEIN_
(If no seal, certify that there is no seal)        Secretary (or officer authorized to act)

Account No. 12934444

**PENSON FINANCIAL SERVICES, INC.**
**AND/OR BROKER DEALERS**
**FOR WHICH IT CLEARS**

## CUSTOMER MARGIN AND SHORT ACCOUNT AGREEMENT

1. Applicable Rules and [illegible]. All [illegible] shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market [illegible] any, upon which such [illegible] executed, except as otherwise specifically provided in this Agreement.

2. Definitions. "Introducing broker" means the [illegible] firm which introduces securities transactions on behalf of the undersigned, which [illegible] whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the undersigned to you, whether now existing or hereafter arising. "Securities and other property" shall include, but shall not be limited to, money, securities, commodities or other property of every kind and nature [illegible]. "You" or "your" refers to Penson Financial Services, Inc. "Undersigned" refers to [illegible] this agreement on behalf of [illegible].

3. Security Interest. All [illegible] and other property now or hereafter held, carried or maintained by you in or for any of the accounts of the undersigned [illegible] including any accounts in which the undersigned may have an interest, shall be subject to a first and prior lien and security interest for the discharge of all [illegible] obligations of the undersigned to you, to the fullest extent allowed by law. [illegible] as security for the payment of the obligations of the undersigned to you [illegible] to any other of the accounts of the undersigned whenever you so determine.

4. Liquidation. [illegible] in the event the margin in any account in which the undersigned has an interest shall [illegible] be deemed insufficient by either you or the introducing broker [illegible] (a) to [illegible]; (b) to buy any or all securities [illegible] either individually or jointly with others; [illegible] all outstanding contracts, all without demand for margin or additional margin [illegible] shall not be a waiver of your rights provided herein. You may likewise accept and rely upon [illegible] as noted in (a), (b), and (c). You shall have the discretion to determine [illegible] may be made at your discretion on any exchange [illegible]. Any such sales or purchases may be made at your discretion on any exchange [illegible] private sale, and you may be the purchaser for your own account.

[illegible] whenever you deem it necessary for your protection, without notice, [illegible]

5. Cancellation. You [illegible] should you for any reason whatsoever deem it necessary [illegible] to close out any commitment made on behalf of the undersigned.

6. Payment of Indebtedness [illegible]. The undersigned shall at all times be liable for the payment upon demand of any obligations owing [illegible] (as contemplated in [illegible]) [illegible] and the undersigned shall make payment of such obligations upon demand.

7. Liability for Costs of Collection. The costs and expenses of collection of the debit balance and any unpaid deficiency in the accounts of the undersigned [illegible] shall be payable to you by the undersigned.

8. Accounts Carried [illegible]. The undersigned understands that you are carrying the accounts of the undersigned as clearing broker by arrangement with the undersigned's introducing broker [illegible]. Until receipt from the undersigned of written notice to the contrary, you may accept [illegible] and (b) any other instructions concerning the [illegible] purchase or sale of securities and other property [illegible] that you act only to clear trades introduced by the undersigned's introducing broker [illegible] relying for any advice concerning the undersigned's accounts [illegible] introducing broker. The undersigned understands that all representatives, employees and other agents with whom the undersigned [illegible] introducing broker and not your representatives, employees or other agents. The undersigned understands that you will not [illegible] principal of or partner with [illegible] the introducing broker or its representatives, employees or other agents [illegible] in the undersigned's accounts. You shall not be responsible or liable for any acts or omissions of the [illegible] introducing broker or its [illegible] employees or other agents.

9. Communications. You [illegible] at the address of the undersigned or at such other address as the undersigned may hereafter [illegible] to you in writing [illegible] shall be deemed given to the undersigned personally, whether actually received or not. Reports of [illegible] shall be conclusive if not objected to in writing to you, the former within five (5) days and the latter within [illegible] days after forwarding by you to the undersigned by mail or otherwise.

BY SIGNING BELOW, [illegible] AGREES TO ALL TERMS OF THE MARGIN AND SHORT ACCOUNT AGREEMENT PRINTED [illegible] THE REVERSE SIDE OF THIS DOCUMENT. THE REVERSE SIDE OF THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE IN PARAGRAPH [illegible]. The undersigned [illegible] securities may be borrowed by you or loaned to others. The undersigned [illegible] of this Agreement and [illegible] of the Margin [illegible] Disclosure Statement.

Date of Delivery of [illegible]

For Use by Individuals [illegible] Joint Accounts:

Signature ...............................

Print Name ...............................

Signature (Second Party [illegible]) ...............................

Print Name ...............................

Date ...............................

For use by entity accounts only [illegible]

Is this account for a foreign bank? [ ] Yes [✓] No [illegible]

Agent for service of process: ..........

Is this account for a foreign shell bank? [ ] Yes [✓] No

Does the firm offer services to a foreign shell bank? [ ] Yes [ ] No

If you answered yes to any of the above questions [illegible] complete Certification Regarding Correspondent Accounts

Signature: [signature] HUSSEIN

Print Name: MOHAMED HUSSEIN

Title: CHAIRMAN Date ..........

Page 1

Penson Margin Agreement [illegible]

[signature]

EXHIBIT 3

Account No. _____

## PENSON FINANCIAL SERVICES, INC.
## AND/OR BROKER DEALERS
## FOR WHICH IT CLEARS

### CUSTOMER MARGIN AND SHORT ACCOUNT AGREEMENT

1. **Applicable Rules and Regulations.**  All transactions shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market and its clearing house, if any, upon which such transactions are executed, except as otherwise specifically provided in this Agreement.

2. **Definitions.** "**Introducing broker**" means any brokerage firm, which introduces securities transactions on behalf of the undersigned, which transactions are cleared through you, whether one or more. "**Obligations**" means all indebtedness, debit balances, liabilities or other obligations of any kind of the undersigned to you, whether now existing or hereafter arising. "**Securities and other property**" shall include, but shall not be limited to, money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "**You**" or "**your**" refers to Penson Financial Services, Inc. "**Undersigned**" refers to the customer, or the party signing this agreement on behalf of the customer.

3. **Security Interest.**  All securities and other property now or hereafter held, carried or maintained by you in or for any of the accounts of the undersigned, now or hereafter opened, including any accounts in which the undersigned may have an interest, shall be subject to a first and prior lien and security interest for the discharge of all of the obligations of the undersigned to you, and are to be held by you as security for the payment of the obligations of the undersigned to you, to the fullest extent allowed by law.  You shall have the right to transfer securities and other property so held by you from or to any other of the accounts of the undersigned whenever you so determine.

4. **Liquidation.**  In the event of the death of the undersigned, or in the event the margin in any account in which the undersigned has an interest shall in either your or the introducing broker's discretion become unsatisfactory to either you or the introducing broker, or be deemed insufficient by either you or the introducing broker, you are hereby authorized; (a) to sell any or all securities or other property which you may hold for the undersigned (either individually or jointly with others); (b) to buy any or all securities and other property which may be short in such accounts; and/or © to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of your rights provided herein.  You may likewise accept and rely upon instructions which you receive from the introducing broker to effect any of the aforementioned transactions (as noted in (a); (b); and (c).  You shall have the discretion to determine which securities and other property are to be sold and which contracts are to be closed.  Any such sales or purchases may be made at your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and you may be the purchaser for your own account.

5. **Cancellation.**  You are authorized, in your discretion, should you for any reason whatsoever deem it necessary for your protection, without notice, to cancel any outstanding order, to close out the accounts of the undersigned, in whole or in part, or to close out any commitment made on behalf of the undersigned.

6. **Payment of Indebtedness Upon Demand.**  The undersigned shall at all times be liable for the payment upon demand of any obligations owing from the undersigned to you, and the undersigned shall be liable to you for any deficiency remaining in any such accounts in the event of liquidation thereof (as contemplated in Paragraph 4 of this Agreement or otherwise), in whole or in part, by you or by the undersigned; and the undersigned shall make payment of such obligations upon demand.

7. **Liability for Costs of Collection.**  The costs and expenses of collection of the debit balance and any unpaid deficiency in the accounts of the undersigned with you, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by you shall be payable to you by the undersigned.

8. **Accounts Carried as Clearing Broker.**  The undersigned understands that you are carrying the accounts of the undersigned as clearing broker by arrangement with the undersigned's introducing broker through whose courtesy the account of the undersigned has been introduced to you.  Until receipt from the undersigned of written notice to the contrary, you may accept from and rely upon the undersigned's introducing broker (a) orders for the purchase or sale of securities and other property, and (b) any other instructions concerning the undersigned's accounts.  The undersigned represents that the undersigned understands that you act only to clear trades introduced by the undersigned's introducing broker and to effect other back office functions for the undersigned's introducing broker.  The undersigned confirms to you that the undersigned is relying for any advice concerning the undersigned's accounts solely on the undersigned's introducing broker.  The undersigned understands that all representatives, employees and other agents with whom the undersigned communicates concerning the undersigned's account are agents of the introducing broker and not your representatives, employees or other agents.  The undersigned understands that you are not a principal of or partner with, and do not control in any way, the introducing broker or its representatives, employees or other agents.  The undersigned understands that you will not review the undersigned's accounts and will have no responsibility for trades made in the undersigned's accounts.  You shall not be responsible or liable for any acts or omissions of the introducing broker or its representatives, employees or other agents.

9. **Communications.**  You may send communications to the undersigned at the address of the undersigned or at such other address as the undersigned may hereafter give you in writing, and all communications so sent, whether by mail, telegraph, messenger or otherwise, shall be deemed given to the undersigned personally, whether actually received or not.  Reports of execution of orders and statements of accounts of the undersigned shall be conclusive if not objected to in writing to you, the former within five (5) days and the latter within ten (10) days, after forwarding by you to the undersigned by mail or otherwise.

BY SIGNING BELOW, THE UNDERSIGNED AGREES TO ALL TERMS OF THE MARGIN AND SHORT ACCOUNT AGREEMENT PRINTED ON THIS SIDE AND THE REVERSE SIDE OF THIS DOCUMENT.  THE REVERSE SIDE OF THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE IN PARAGRAPH 10.  The undersigned acknowledges that the undersigned's margin account securities may be borrowed by you or loaned to others.  The undersigned also acknowledges receipt of a copy of this Agreement and a copy of the Margin Risk Disclosure Statement.

Date of Delivery of Margin Risk Disclosure Statement: _____

**For Use by Individuals, including joint accounts:**

Signature: _____

Print Name: _____

Signature (Second Party, If Joint Account): _____

Print Name: _____

Date: _____

**For use by entity accounts only (i.e. corporations, partnerships, trusts):**

Is this account for a foreign bank?  ☐ Yes  ☐ No – If Yes, please list

Agent for service of process: _____

Is this account for a foreign shell bank?  ☐ Yes  ☐ No.

Does this firm offer services to a foreign shell bank?  ☐ Yes  ☐ No

**If you answered yes to any of the above questions, Corporation will need to**
**complete Certification Regarding Correspondent Accounts**

Signature: _____

Print Name: _____

Title: _____    Date: _____

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:

a. ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED;

b. ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

c. THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;

d. THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

e. THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

f. THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

g. THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

10. **ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR YOUR AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NASD. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR(S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

11. **Hypothecation.** Within the limitations imposed by applicable laws, rules and regulations, all securities now or hereafter held by you, or carried by you in any account for the undersigned (either individually or jointly with others), or deposited to secure same, may from time to time, without any notice, be carried in your general loans and may be pledged, repledged, hypothecated or re-hypothecated, separately or in common with other securities for the sum due to you thereon or for a greater sum and without retaining in your possession or control for delivery a like amount of similar securities. The IRS requires Broker Dealers to treat dividend payments on loaned securities positions as in-lieu dividends for 1099 tax reporting purposes. Taxation of substitute dividend payments may be greater than ordinary on qualified dividends. It is understood, however, that you agree to deliver to the undersigned upon demand and upon payment of the full amount due thereon, all securities in such accounts, but without obligation to deliver the same certificates or securities deposited by the undersigned originally. Any securities in the undersigned's margin or short account may be borrowed by you, or lent to others.

12. **Interest.** Debit balances in all the accounts of the undersigned shall be charged with interest in accordance with your established custom, as disclosed to the undersigned in the Customer Information Brochure pursuant to the provisions of Rule 10b-16 of the Securities Exchange Act.

13. **Margin.** The undersigned agrees to maintain in all accounts with you such positions and margins as required by all applicable statutes, rules, regulations, procedures and custom, or as you deem necessary or advisable. The undersigned agrees to promptly satisfy all margin and maintenance calls.

14. **Sales.** The undersigned agrees to specifically designate any order to sell a security, which the undersigned does not own as a short sale, and understands that you will mark such order as a short sale. The undersigned agrees that any order which is not specifically designated as a short sale is a sale of securities owned by the undersigned, and that the undersigned will deliver the securities on or before settlement date, if not already in the account. If the undersigned should fail to make such delivery in the time required, you are authorized to borrow such securities as necessary to make delivery for the undersigned's sale, and the undersigned agrees to be responsible for any loss you may thereby sustain, or which you may sustain as a result of your inability to borrow such securities.

15. **Representations.** The undersigned represents that the undersigned is of majority age, that the undersigned is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or a member corporation registered on any exchange or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business dealing either as broker or as principal in securities, bills of exchange, acceptances or other forms of commercial paper. If the undersigned is a corporation, partnership, trust or other entity, the undersigned represents that its governing instruments permit this Agreement, that all applicable persons have authorized this Agreement and that the undersigned signatory is authorized to bind the undersigned. The undersigned represents that the undersigned shall comply with all applicable laws, rules and regulations in connection with the undersigned's account. The undersigned further represents that no one except the undersigned has an interest in the account or accounts of the undersigned with you.

16. **Joint Account.** If the undersigned shall consist of more than one person, the undersigned's obligations under this Agreement shall be joint and several. References to the "undersigned" shall include each of the undersigned. You may rely on transfer or other instructions from any one of the undersigned in a joint account, and such instructions shall be binding on each of the undersigned. You may deliver securities or other property to, and send confirmations, notices, statements and communications of every kind, to any one of us, and such action shall be binding on each of us. Notwithstanding the foregoing, you are authorized in your discretion to require joint action by the joint tenants with respect to any matter concerning the joint account, including but not limited to the giving or cancellation of orders and the withdrawal or money, securities, futures or commodities.

17. **Other Agreements.** The undersigned agrees to be bound by the terms of your **Customer Account Agreement.** If the undersigned trades any options, the undersigned agrees to be bound by the terms of your **Customer Option Agreement.** The undersigned understands that copies of these agreements are available from you and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between you and the undersigned.

18. **Data Not Guaranteed.** The undersigned expressly agrees that any data or online reports is provided to the undersigned without warranties of any kind, express or implied, including but not limited to, the implied warranties of merchantability, fitness of a particular purpose or non-infringement. The undersigned acknowledges that the information contained in any reports provided by you is obtained from sources believed to be reliable but is not guaranteed as to its accuracy of completeness. Such information could include technical or other inaccuracies, errors or omissions. In no event shall you or any of your affiliates be liable to the undersigned or any third party for the accuracy, timeliness, or completeness of any information made available to the undersigned or for any decision made or taken by the undersigned in reliance upon such information. In no event shall you or your affiliated entities be liable for any special incidental, indirect or consequential damages whatsoever, including, without limitation, those resulting from loss of use, data or profits, whether or not advised of the possibility of damages, and on any theory of liability, arising out of or in connection with the use of any reports provided by you or with the delay or inability to use such reports.

19. **Credit Check.** You are authorized, in your discretion, should you for any reason deem it necessary for your protection to request and obtain a consumer credit report for the undersigned.

20. **Miscellaneous.** If any provision of this Agreement is held to be unenforceable; it shall not affect any other provision of this Agreement. The headings of each section of this Agreement are descriptive only and do not modify or qualify any provision of this Agreement. This Agreement and its enforcement shall be governed by the laws of the state of Texas and shall cover individually and collectively all accounts which the undersigned has previously opened, now has open or may reopen with you, or any introducing broker, and any and all previous, current and future transactions in such accounts. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by your authorized representative. This Agreement and all provisions shall inure to the benefit of your successors, whether by merger, consolidation or otherwise, your assigns, the undersigned's introducing broker, and all other persons specified in Paragraph 10. You shall not be liable for losses caused directly or indirectly by any events beyond your reasonable control, including without limitation, government restrictions, exchange or market rulings, suspension of trading or unusually heavy trading in securities, a general change in economic, political or financial conditions, war or strikes. You may transfer the accounts of the undersigned to your successors and assigns. This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the undersigned.