UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PENSON FINANCIAL SERVICES, INC., | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:07-CV-0372-B ECF |
| MISR SECURITIES INTERNATIONAL, | § § | |
| Defendant. | § | |

## MEMORANDUM ORDER

Before the Court is Plaintiff's Motion to Stay Proceedings and Compel Arbitration filed June 6, 2006 (doc. 7) and Plaintiff Penson Financial Services, Inc.'s Motion for Leave to File First Amended Complaint (doc. 18). For the reasons that follow the Court **GRANTS** Plaintiff's Motion to Stay Proceedings and Compel Arbitration. This action is hereby **STAYED** pending arbitration but for Plaintiff's Motion for Antisuit Injunction (doc. 21). The Court also **DENIES** Plaintiff's Motion for Leave to File First Amended Complaint.

### I. Background

This case relates to Penson Financial Services, Inc.'s ("Penson") allegations that MISR Securities International ("MISR") requested and received wired funds from its brokerage account with Penson which MISR did not have sufficient funds to cover. (Pl.'s Mot. to Stay Proceedings ¶ 1.04). Penson instituted arbitration against MISR on December 12, 2006 with the National Association of Securities Dealers, Inc. ("NASD"). (Pl.'s Mot. to Stay Proceedings ¶ 1.05). On April 12, 2007, MISR filed an answer objecting to the jurisdiction of the NASD. (Pl.'s Mot. to Stay

Proceedings ¶ 1.06). On February 27, 2007, Penson filed the complaint in this case against MISR asserting the following causes of action: money had and received, money paid by mistake, suit on account, and breach of contract. (Pl.'s Compl. ¶¶ 10-19). On May 21, 2007, MISR filed an answer including affirmative defenses and counterclaims for breach of contract and suit on account. (Def.'s Answer ¶¶ 4.01-4.05). Penson filed the instant Motion to Stay Proceedings and Compel Arbitration on June 6, 2007.

Penson claims that on February 15, 2006, Mohamed Hussein, the President of MISR, signed a Penson Financial Services, Inc. "Customer Account Agreement" which provided, in part: "THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES: a. ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT . . . b. ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING . . ." (Aff. of Kimberly Miller ¶ 6). Paragraph 8 of the agreement provides:

> ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSON OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NASD.

(Aff. of Kimberly Miller ¶ 6). Mr. Hussein also completed a "Customer Margin and Short Account Agreement" which contained language identical to Paragraph 8 of the Customer Account Agreement. (Aff. of Kimberly Miller ¶ 7). Penson contends that both its claims and MISR's

counterclaims fall within the compass of the arbitration agreement and must therefore be arbitrated. (Pl.'s Mot. to Stay Proceedings ¶¶ 1.15-1.16). MISR claims that the Federal Arbitration Act does not apply because the transactions at issue do not involve or affect interstate commerce. (Def.'s Answer Br. 2). MISR also discusses its lack of minimum contacts with Texas, accuses Penson of forum shopping, questions why Penson did not immediately make a motion to compel arbitration in this case, claims that the court is free to hear the case based upon law and equity, and states that the case law cited by Penson is distinguishable. (Def.'s Answer Br. 3-7).

## II. Analysis

**A.    Legal Standard**

Section 2 of the Federal Arbitration Act ("FAA") provides that a written provision in a contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Federal policy favors arbitration and "ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (quoting *Volt Info. Sci., Inc. v. Bd. of Trustees*, 489 U.S. 468, 476 (1989)). In the Fifth Circuit, courts generally follow a two-step procedure in determining whether to compel arbitration. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). First, the Court must ascertain whether the parties agreed to arbitrate the dispute at issue. *Id.* at 258. An agreement to arbitrate a dispute is shown where (1) there exists between the parties a valid agreement to arbitrate; and (2) the dispute in question falls within the scope of the agreement. *Id.* Once the Court is satisfied that the parties agreed to arbitrate the dispute, it must then determine whether any external legal

constraints foreclose arbitration of the dispute. *Id.*

B.      **Whether the Parties Agreed to Arbitrate Penson and MISR's Claims**

1.      **Validity of arbitration agreement between the parties**

MISR claims that it did not open an account with Penson but instead opened an account with Synergy Investments to trade securities on the London Stock Exchange. (Def.'s Answer Br. 1). Synergy entered into a contract with Penson in order to execute trades. (Def.'s Answer Br. 1). According to MISR, as part of this agreement between Penson and Synergy, MISR "was required to execute boilerplate Customer Account Agreements with the clearing firm—Penson." (Def.'s Answer Br. 1). MISR does not appear to dispute the existence or the validity of its Customer Account Agreement with Penson.[1] Furthermore, MISR bases its counterclaim for breach of contract on the Customer Account Agreement. (Def.'s Answer ¶ 4.02). While MISR mentions that arbitration agreements can be revoked "on such grounds that exist at law or equity for the revocation of any contract," it does not offer any grounds for this contract to be revoked. (Def.'s Answer Br. 7). Accordingly, the Court finds that the parties entered into a valid contract which included provisions requiring arbitration.

**2.      Scope of the arbitration agreement**

Having found the existence of a valid agreement to arbitrate between the parties, the Court must next determine whether the dispute in question falls within the scope of that agreement. *Webb*,

---

[1]The Court does not construe MISR's statement that it was required to execute this boilerplate agreement as an argument that the contract was unconscionable. If MISR was arguing this point, it would have the burden of showing unconscionability. *See Fleetwood Enter., Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002) ("The party contesting the contractual arbitration provision has the burden to show procedural unconscionability.").

89 F.3d at 258. The arbitration provision in the agreement sweeps broadly, covering all "controversies, disputes or claims . . . arising out of, in connection with, from or with respect to (a) any provisions of or the validity of this agreement or any related agreement, (b) the relationship of the parties hereto, or (c) any controversy arising out of your business . . . ."). Penson contends that all of its claims fall within the scope of that provision. MISR, in its answer brief, does not contest this point, but instead contests whether the Federal Arbitration Act is applicable, which the Court will address below. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899-900 (Tex. 1995) (stating that the burden falls upon the party opposing arbitration to show that its claims fall outside the scope of the arbitration agreement). Penson's claims involve wires from an account with insufficient funds, and MISR's counterclaim involves failure to pay the remaining credit balance in the account. (Pl.'s Mot. to Stay Proceedings ¶ 1.15; Def.'s Answer ¶ 4.03-4.05). The provision of the arbitration agreement requiring arbitration of "any controversy arising out of . . . the undersigned's accounts" covers these claims. (Aff. of Kimberly Miller ¶ 6). Penson and MISR also claim breaches of the customer agreement. ((Pl.'s Compl. ¶¶ 18-19; Def.'s Answer ¶ 4.01). The provision requiring arbitration of "any and all controversies, disputes or claims . . .arising out of, in connection with, from or with respect to a) any provisions of or the validity of this agreement" encompasses these breach of contract claims. (Aff. of Kimberly Miller ¶ 6). The Court agrees with Penson that the arbitration clause covers these claims relating to MISR's account with Penson and breach of contract.

**3. Applicability of the Federal Arbitration Agreement**

MISR contends that the Federal Arbitration Agreement does not apply because the transactions at issue "do not involve or affect 'interstate commerce' within the several states" and

the agreement "does not expressly invoke the FAA." [2] (Def.'s Answer Br. 2). MISR cites generally *Allied-Bruce* for these propositions. *Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265 (1995). MISR is presumably referring to language in *Allied-Bruce* stating "the [Federal Arbitration] Act's language . . . insist[s] that the 'transaction' in fact 'involv[e]' interstate commerce." *Id.* at 281. MISR's reliance on this statement is taken out of context. *Allied-Bruce* does not involve foreign commerce and instead calls for a broad reading of the phrase "involving commerce." *Id.* at 268 ("We conclude that the broader reading of the Act is the correct one . . . ."); *Id.* at 273 ("These words [involving commerce] are broader than the often-found words of art 'in commerce.'"). Furthermore, the Court twice made statements suggesting that the phrase "involving commerce" includes foreign commerce. *Id.* at 274 ("[T]he Act reflects part of a strategy to rid the law of an 'anachronism' by 'get[ting] a Federal law to cover interstate and foreign commerce and admiralty.'" (quoting testimony of Julius H. Cohen, drafter of much of the proposed bill's language)); *Id.* at 279 ("The Act's history, to the extent informative, indicates that the Act's supporters saw the Act as part of an effort to make arbitration agreements universally enforceable. They wanted to 'get a Federal law' that would 'cover' areas where the Constitution authorized Congress to legislate, namely, 'interstate and foreign commerce and admiralty.'" (quoting testimony of Julius H. Cohen)).

Section 1 of the Federal Arbitration Act defines commerce as "commerce among the several States or with foreign nations . . ." 9 U.S.C. § 1. Several Courts of Appeal have also interpreted the

---

[2] The parties disagree about whether the transactions at issue involved interstate commerce. MISR claims that the transactions occurred outside the United States and that it entered its contractual relationship with Synergy for the purpose of trading on the London Stock Exchange, not the New York Stock Exchange. (Def.'s Answer Br. 2). Penson contends that the contract between the parties and the wire transfers made by Penson from Penson's account in New York to MISR's account in Egypt involve interstate commerce. (Pl.'s Reply 2). The Court need not address this issue because it finds that the FAA applies to foreign commerce.

Federal Arbitration Act to apply to foreign commerce. *See David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 249 (2d Cir. 1991) ("The Supreme Court has clearly held that the Arbitration Act applies in federal court to diversity suits which relate to contracts involving interstate or international commerce." (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967))); *National Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 335 (5th Cir. 1987) ("This policy [of favoring the use of arbitration if the parties have contractually agreed to resolve their disputes in this manner] acquires special significance in the international context where, because of transnational fora and concomitant conflicts of laws problems, arbitration appears a more inviting forum.") (citations omitted).

As for MISR's claim that the arbitration agreement must specifically invoke the FAA, the Court finds no support for this proposition in *Allied-Bruce* or other jurisprudence. *See Webb*, 89 F.3d at 255, 259-60 (holding that an arbitration clause providing that "It is hereby agreed by the parties that all proceedings will be subject to arbitration before the NASD . . ." was clear and should be enforced). The Court disagrees with MISR's claims that to be covered by the FAA the transactions must involve interstate commerce and the agreement must invoke the FAA. Accordingly, the Court finds that the FAA applies.

C. **External Legal Constraints**

Having found that the parties entered into a valid arbitration agreement, that all of the claims are encompassed by that agreement, and that the FAA applies, the Court must next determine whether any external legal constraints foreclose arbitration of the dispute. *Webb*, 89 F.3d at 258. MISR contends that Penson should have filed a motion to compel arbitration "right out of the box," filed a declaratory action, or "filed a complaint with a specific prayer for relief to compel

arbitration."[3] (Def.'s Answer Br. 6).  However, a party is not required to move to compel arbitration immediately.  *See Parcel Tankers, Inc. v. Formosa Plastics Corp.*, 569 F. Supp. 1459, 1467 (S.D. Tex. 1983) (granting motion to compel arbitration when plaintiff filed its motion to compel nineteen days after it filed its complaint); *see also Stifel, Nicolaus & Co. Inc. v. Freeman*, 924 F.2d 157, 158-59 (8th Cir. 1991) (compelling arbitration when plaintiff filed a lawsuit, engaged in discovery on arbitrable claims, and moved to compel arbitration six months after filing suit).  Therefore, the Court finds that Penson's failure to move to compel arbitration in its complaint does not preclude it from enforcing the arbitration agreement.

MISR also discusses its lack of minimum contacts, but this argument is moot as MISR has already submitted to personal jurisdiction.  In addition, its allegations of forum shopping are unpersuasive because MISR cites no authority in this discussion.  MISR states that the agreement may be revoked for any grounds that exist at law or equity for the revocation of a contract but does not offer any specific grounds for revocation.  Finally, in its discussion claiming that the cases cited by Penson are distinguishable, MISR does not cite any authority or point out which cases are distinguishable.  Accordingly, the Court finds that no external legal constraints foreclose arbitration of the dispute.

### III. Motion for Leave to File First Amended Complaint

Penson filed its Motion for Leave to File First Amended Complaint because it wanted to "make clear Penson's purpose in filing this lawsuit and to answer the query put forth by MISR."

---

[3] MISR does not allege or offer any authority to support a finding that Penson has waived arbitration. The Court will not address this potential argument because "a party alleging waiver of arbitration must carry a heavy burden."  *Subway Equipment Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999) (citing *Associated Builders v. Ratcliff Constr. Co.*, 823 F.2d 904, 905 (5th Cir. 1987)).

(doc. 18). Penson also sought to incorporate facts related to the arbitration agreement and a request for the Court to compel arbitration. Because the Court has determined that Penson's motion to compel arbitration should be granted, it is unnecessary for Penson to file an amended complaint. Accordingly, Penson's Motion for Leave to File Amended Complaint is **DENIED.**

### IV. Conclusion

For the reasons set forth in this order, the Court **GRANTS** Penson's Motion to Stay Proceedings and Compel Arbitration. Pursuant to 9 U.S.C. § 3, this action is hereby **STAYED** pending arbitration but for Plaintiff's Motion for Antisuit Injunction. Penson's Motion for Leave to File Amended Complaint is **Denied.**

SO ORDERED.

SIGNED December 10th , 2007

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE