UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PENSON FINANCIAL SERVICES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:07-CV-0372-B |
| | § | ECF |
| MISR SECURITIES INTERNATIONAL, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM ORDER

Before the Court are Penson Financial Services, Inc.'s Application to Confirm Arbitration Award and for Judgment and Brief in Support (doc. 40) and Defendant MISR's Motion to Vacate Arbitration Award (doc. 45). For the reasons that follow, the Court **GRANTS** the Application to Confirm the Arbitration Award (doc. 40) and **DENIES** the Motion to Vacate the Arbitration Award (doc. 45).

### I. Background

A.  *The Parties and the Arbitration Agreement*

This case relates to a dispute between Penson Financial Services, Inc. ("Penson"), a brokerage firm with its principal place of business in Dallas, Texas, and MISR Securities International ("MISR"), an Egyptian securities brokerage firm. (Compl. 2). On February 15, 2006, Mohamed Hussein, the President of MISR, signed a Penson Financial Services, Inc. "Customer Account Agreement" which provided, in part: "THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES: a. ALL PARTIES TO

THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT . . .

b. ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING . . ." (Ex. A to doc. 7). Paragraph 8 of the agreement provides:

> ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSON OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NASD.

(*Id.*). Mr. Hussein also completed a "Customer Margin and Short Account Agreement" which contained language identical to Paragraph 8 of the Customer Account Agreement. (*Id.*).

## B.   *The Arbitration Proceedings*

Penson alleges that MISR requested and received wired funds from its brokerage account with Penson which MISR did not have sufficient funds to cover. (Pl.'s Mot. to Stay Proceedings ¶ 1.04). Based on these allegations, Penson instituted arbitration against MISR on December 20, 2006 with the Financial Industry Regulatory Authority ("FINRA")[1] by filing a Statement of Claim. (Penson's Reply 3; Ex. B to doc. 7). FINRA sent this Statement of Claim to MISR in Egypt by mail on February 22, 2007. (MISR's Mot. to Vacate 8; Def.'s Ex. 4). On April 12, 2007, MISR sent an answer to the Statement of Claim that stated that it did not agree to FINRA jurisdiction and that

---

[1]Penson originally filed its Statement of Claim with the National Association of Securities Dealers, Inc. ("NASD"). On July 30, 2007, NASD became FINRA. (Penson's Reply 3 n.2). To eliminate confusion, for purposes of this Order, the Court will refer to the association as FINRA.

it had not executed a Uniform Submission Agreement. (Def's Ex. 5). On May 10, 2007, Penson again sent a letter to FINRA stating that it did not accept FINRA jurisdiction. (Def.'s Ex. 6). The letter also pointed out that Penson had filed an action in federal court and that a member could not have two separate actions pending. (*Id.*). A pre-hearing conference was set for June 12, 2007. On June 11, 2007, MISR sent a letter reminding the FINRA Panel (the "Panel") that FINRA did not have proper jurisdiction over MISR and stating that it would not attend the hearing. (Def.'s Ex. 7). At the June 12 pre-hearing telephonic conference, which MISR did not attend, the Panel set a hearing date of January 22-25, 2008. (Def.'s Ex. 8). The Panel requested that the parties brief the issue of jurisdiction raised by MISR's answer and set a second pre-hearing conference call for July 11, 2007. (Def.'s Ex. 8). Penson filed a brief is support of FINRA jurisdiction on June 21, 2007, but MISR did not file a brief. (Penson's Reply 4). At the July 11 conference, which MISR did not attend, the Panel determined that it had jurisdiction over MISR based on the arbitration agreements. (Def.'s Ex. 9). On October 17, 2007 and October 23, 2008, MISR sent additional letters objecting to jurisdiction. (Def.'s Ex. 11, 12). On November 14, the Panel held another pre-hearing telephonic conference in which it expressed concern about MISR's failure to acknowledge that the Panel had determined that it had jurisdiction. (Def.'s Ex. 20). The Panel requested that FINRA send MISR's counsel copies of the relevant documents. (*Id.*).

On December 10, 2007, (as discussed below) this Court granted Penson's Motion to Compel Arbitration (doc. 30). On December 26, 2007, MISR filed a "Motion to Strike Arbitration Panel or in the Alternative Motion for Recusal of Arbitration Panel Motion for New Hearing Dates Motion for Venue in London." (Def.'s Ex. 19). In this motion, MISR for the first time specifically raised its argument that it had not been properly served with the FINRA arbitration action. (Def.'s

Ex. 19 at 2). On January 11, 2008, Penson supplemented this motion with a letter requesting that the January 21 hearing be rescheduled because it would take the MISR Egyptian principals up to eight weeks to obtain travel visa's to attend the hearing. (Def.'s Ex. 13). Penson objected to this motion because the hearing date had been set since June 2007 and it did not believe that MISR's motion was in good faith. (Penson's Reply 5). On December 17, 2007 and January 7, 2008, the Panel granted Penson's Motions to Compel Production of Documents and Responses to Requests. (Pl.'s Ex 2, 3). MISR did not comply with these orders. (Penson's Reply 5). On January 11, 2008, Penson filed a Motion to Dismiss Penson's Defenses, or to Bar Testimony and Evidence based on MISR's failure to comply with discovery orders and FINRA rules. (Penson's Reply 5). On January 15, 2008, the Panel denied MISR's Motion to Strike Arbitration Panel, etc. (Def.'s Ex. 14). On January 18, 2008, after holding a telephonic conference[2], the Panel denied Penson's motion to dismiss MISR's defenses and granted the motion to bar MISR from presenting testimony or documentary evidence at the final hearing. (Def.'s Ex. 16). The final arbitration hearing took place on January 22, 2008. Michael Kennedy attended as counsel for MISR and objected to the composition of the Panel, the jurisdiction of the Panel, and to the proceedings. (Ex. 2 to doc. 46 at 2-11). He then exited the hearing. (*Id.* at 11). After Penson presented evidence, the Panel awarded Penson $1,046,000.00 consisting of $836,000.00 in damages and $210,000.00 in attorney's fees. (Ex. A to Penson's Application to Confirm).

C.  *The Federal Court Proceedings*

On February 27, 2007, Penson filed the complaint in this case against MISR asserting the

---

[2]Counsel for both parties attended this conference and presented oral argument.

following causes of action: money had and received, money paid by mistake, suit on account, and breach of contract. (Pl.'s Compl. ¶¶ 10-19). On May 21, 2007, MISR filed an answer including affirmative defenses and counterclaims for breach of contract and suit on account. (Def.'s Answer ¶¶ 4.01-4.05). Penson filed its Motion to Stay Proceedings and Compel Arbitration on June 6, 2007 (doc. 7), and the Court granted this motion on December 10, 2007. (doc. 30). On September 13, 2007, Penson also filed a Motion for Anti-suit Injunction to enjoin MISR from prosecuting its Egyptian lawsuits. (doc. 21). The Court granted this motion on January 30, 2008, after holding a hearing on it. (doc. 39). On February 8, 2008, Penson filed an Application to Confirm the Arbitration Award and for Judgment. (doc. 40). Combined with its March 3[3] Response to this Application, MISR filed a Motion to Vacate the Arbitration Award. (doc. 45). Penson filed its Reply in support of its Application to Confirm along with its Response to MISR's Motion to Vacate on March 27, 2008. (doc. 47). MISR filed its Reply in support of its Motion to Vacate on April 10, 2008. (doc. 49). These Motions, being fully briefed, are now ripe for determination.

## II. Analysis

A district court's review of an arbitration award is exceedingly narrow. *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 352 (5th Cir. 2004) (noting that the court must have an "exceedingly deferential" view of the arbitrator's decision). The Court "'may not reconsider an award based on alleged errors of fact or law or misinterpretation of the contract.'" *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164-65 (5th Cir. 1998) (internal citations omitted).

As long as the arbitration award is rationally inferable from the underlying agreement, the

---

[3]The Court granted MISR an extension of time to file its Response. (doc. 44).

award must be upheld. *Id.* at 165.

The Federal Arbitration Act ("FAA") sets out limited circumstances under which an arbitrator's award can be vacated:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a) (1999 & Supp. 2005). The Fifth Circuit has recognized only two non-statutory grounds for vacating an arbitration award–when the arbitrator manifestly disregards the law or when the award violates public policy. *Kergosien*, 390 F.3d at 353; *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 381 (5th Cir. 2004).

MISR advances the following arguments in support of its Motion to Vacate the Arbitration Award: (1) the Panel exceeded its authority because FINRA failed to effectuate service in compliance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"); (2) the Panel manifestly disregarded the law and gave MISR a fundamentally unfair hearing by preemptively refusing to hear any evidence or testimony; (3) the Panel manifestly disregarded the law and gave MISR a fundamentally unfair hearing by refusing to postpone the hearing so that MISR could attend; and

(4) the Panel exceeded its authority by awarding attorneys fees for matters outside the arbitration. The Court will now address each of these arguments in turn.

A.  *MISR Has Waived Its Objection to Service Based on Violation of the Hague Convention.*

Both the United States and Egypt are signatories to the Hague Convention. *Shenouda v. Mehanna*, 203 F.R.D. 166, 170 (D.N.J. 2001). MISR contends that FINRA did not serve MISR in compliance with this Convention. However, the Court need not address this argument because MISR has waived it.[4]

Courts have held that a party who does not specifically object to insufficient service based on the Hague Convention waives this objection. For example, in *Photolab, Carl Hostert, GmbH*, ("Hostert, GmbH") a German company, filed an answer to a federal court complaint stating that the district court did not have jurisdiction over the company or the subject matter of the lawsuit. *Photolab Corp. v. Simplex Specialty Co.*, 806 F.2d 807, 809 (8th Cir. 1986). Hostert, GmbH later filed a motion to dismiss for lack of jurisdiction and failure of service stating that no agent of the company had been served and that service did not comply with Federal Rule of Civil Procedure 4(i). *Id.* Hostert, GmbH also moved for leave to withdraw its answer because it contained inaccuracies or for a continuance. *Id.* The district court denied these motions. *Id.* A trial was held and at the conclusion of the trial, the plaintiff was allowed to add two defendants, including Hostert KG to the complaint. *Id.* at 810. Hostert KG was also a West German company controlled by the same individual as Hostert, GmbH. *Id.* at 808. The district court concluded that the Hostert companies had waived their objections to the adequacy of service and to the lack of personal jurisdiction

---

[4]The Court expresses no opinion on whether FINRA failed to serve MISR in compliance with the Hague Convention.

because they did not timely make an objection pursuant to Federal Rule of Civil Procedure 12(h). *Id.* The Hostert companies were found liable for breach of express and implied warranties of merchantability. *Id.* at 810. Hostert KG appealed contending that service of process was governed by the Hague Convention and that West Germany specifically rejected service by direct mail. *Id.* It claimed that the service by mail violated the Hague Convention and was ineffective. *Id.* The Court of Appeals for the Eighth Circuit stated that FRCP 12(g) and (h) provide that an objection to insufficiency of service of process is waived unless it is raised in the answer or by motion before filing a responsive pleading. *Id.* (citation omitted). "The objection must be specific and point out in what manner the plaintiff has failed to satisfy the requirements of the service provision utilized." *Id.* (citation omitted). The court concluded that the district court was correct that Hostert KG waived its objection to service of process because it did not raise it in a pretrial motion or answer. *Id.* at 811. "The issue of sufficiency of process was not raised until approximately ten months after the filing of the complaint, and then not on the basis of a violation of the Hague Convention." *Id.*

The court in *Photolab* cited another relevant case, *Zisman v. Sieger*, 106 F.R.D. 194 (N.D. Ill. 1985). In that case, a Japanese corporation filed an answer to a third party complaint raising, among others, the defenses of lack of personal jurisdiction, insufficient service of process, and statute of limitations. *Id.* at 196. The corporation later filed a 12(b) motion to dismiss based on insufficient service for failure to comply with Illinois law for service of process. *Id.* The court determined that the corporation had not been properly served and granted the plaintiff's motion for leave to serve the corporation. *Id.* The plaintiff then attempted service of the corporation by mail. *Id.* The court issued an opinion granting the corporation's motion to dismiss because under Illinois law, service of the agent of an agent is not service on the principal. *Id.* The court granted the plaintiff leave to

serve the corporation again, and the plaintiff again attempted service. *Id.* at 196-97. The corporation then moved to dismiss in part because the plaintiff's second attempted service did not comply with the Hague Convention. *Id.* at 197. The court pointed out that the corporation's first motion to dismiss was based only on the plaintiff's failure to comply with Illinois law for service of process. *Id.* The Japanese corporation "could have, but did not raise the issue of compliance with the Hague Convention." *Id.* The court concluded that failure to raise an objection to the sufficiency of service of process based on the Hague Convention in its first motion to dismiss waived this objection under Federal Rule of Civil Procedure 12(g) and (h).

While the Court recognizes that *Photolab* and *Zisman* involved service of a complaint in federal court proceedings, these cases are instructive in this case in the context of the service of a statement of claim in arbitration proceedings. Furthermore, FINRA procedural rules and case law involving arbitration also support a finding of waiver. FINRA Code of Arbitration Procedure has a provision similar to Federal Rule of Civil Procedure 12(g) and (h)[5]: "A Respondent, Responding Claimant, Cross-Claimant, Cross-Respondent, or Third-Party Respondent who fails to specify all available defenses and relevant facts in such party's answer may, upon objection by a party, in the discretion of the arbitrators, be barred from presenting such facts or defenses not included in such

---

[5]Federal Rule of Civil Procedure 12(g) provides, "(1) *Right to Join*. A motion under this rule may be joined with any other motion allowed by this rule. (2) *Limitation on Further Motions*. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Federal Rule of Civil Procedure 12(h) provides, "A party waives any defense listed in Rule 12(b)(2)-(5) by: (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or (B) failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course. . . ."

- 9 -

party's Answer at the hearing." FINRA Code of Arbitration Procedure 10314(b)(2)(B).[6]  In addition, courts have held that parties waive their objections by not raising them during the arbitration proceedings.  *Marino v. Writers Guild of Am., E., Inc.*, 992 F.2d 1480, 1483 (9th Cir. 1993) ("[P]arties must be encouraged, nay required, to raise their complaints about the arbitration during the arbitration process itself, when that is possible."); *Weinberger v. Silber*, 140 F. Supp. 2d 712, 721 (N.D. Tex. 2001) (citations omitted) ("If a party does not protest to the arbitrator, courts generally will not give him a second chance to do so in a motion to vacate.").

Contrary to its assertion in its briefing, MISR did not "specially [appear] in the arbitration proceeding to objected [sic] to the FINRA's jurisdiction on the grounds of lack of service." (MISR's Mot. to Vacate 6).  Instead it stated in its answer, "Respondent does not agree to NASD jurisdiction and has specifically not executed a Uniform Submission Agreement at this time." (Def.'s Ex. 5).  This answer did not mention improper service or the Hague Convention.  MISR's May 10, June 11, October 17, and October 23 letters stated that it did not accept FINRA jurisdiction and objected to jurisdiction but did not mention improper service or the Hague Convention. (Def.'s Ex. 6,7,11, 12).  MISR raised the issue of improper service for the first time in its December 26, 2007 motion but did not mention the Hague Convention: "To date, MISR has <u>not</u> been properly served with the instant NASD Arbitration action . . ." (Def.'s Ex. 19).  Finally, at the January 22, 2008 hearing, MISR argued that it had not been served but did not reference the Hague Convention. (Ex. 2 to doc. 46).  Furthermore, MISR had the opportunity to specify that its objection was based on improper service in violation of the Hague Convention when the Panel requested briefing on the

---

[6]The FINRA Code of Arbitration Procedure may be found at:
http://finra.complinet.com/finra/display/display.html?rbid=1189&record_id=1159001443.

- 10 -

jurisdictional issue raised by MISR's answer, but it failed to file briefing. (Penson's Reply 4).

MISR has waived its objection to service based on the Hague Convention because it filed an answer that failed to specify that defense and never raised this issue in the arbitration proceedings. FINRA Code of Arbitration Procedure 10314(b)(2)(B). Under *Photolab*, an objection to jurisdiction in its answer was not sufficient to preserve the objection of insufficient service. *Zisman* required MISR not only to object to sufficiency of service but to specify that its objection to service was based on the Hague Convention. MISR never referenced the Hague Convention in the arbitration proceedings. Similar to *Photolab*, "The issue of sufficiency of process was not raised until" approximately one year after Penson instituted arbitration, "and then not on the basis of a violation of the Hague Convention." *Photolab*, 806 F.2d at 811. Accordingly, MISR has waived its objection to sufficiency of service based on the Hague Convention. The Court will now turn to MISR's second argument in support of its Motion to Vacate.

**B.** *The Panel Complied With FINRA Procedural Rules and Did Not Engage in Misconduct When it Barred MISR from Presenting Evidence.*

MISR claims that the arbitration award should be vacated because the Panel preemptively refused to hear MISR's evidence. (MISR's Mot. to Vacate 14). One of the grounds for vacating an arbitration award under the FAA is "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy . . ." 9 U.S.C. § 10(a). MISR also contends that the behavior of the arbitrators was a manifest disregard of the FINRA Code of Arbitration Procedure citing the provisions for Representation by Counsel (10316), Hearing Requirements–Waiver of Hearing (10303), and Attendance at Hearings (10317). (MISR's Mot. to Vacate 14). Rule 10316 provides, "All parties shall have the right to representation by counsel at

any stage of the proceedings." Rule 10303(a) provides, "Any dispute, claim or controversy . . . shall require a hearing unless all parties waive such hearing in writing and request that the matter be resolved solely upon the pleadings and documentary evidence." Rule 10317 provides "all parties to the arbitration and their counsel shall be entitled to attend all hearings." MISR does not specify which actions of the Panel have violated these rules.

In its Response/Reply, Penson claims that the Panel adhered to the FINRA Code of Arbitration Procedure. FINRA Rule 10305(b) provides that the arbitrators "may dismiss a claim, defense, or proceeding with prejudice as a sanction for willful and intentional material failure to comply with an order of the arbitrator(s) if lesser sanctions have proven ineffective." FINRA Rule 10321(c) requires the parties to serve copies of documents and identify witnesses that they intend to present at the hearing twenty days prior to the hearing. If the parties do not comply with this rule, "[t]he arbitrators may exclude from the arbitration any documents not exchanged or witnesses not identified." MISR refused to produce any documents following two discovery orders, dated December 17, 2007 and January 7, 2008. (Penson's Reply 11). MISR also refused to provide documents in compliance with the Rule 10321(c) twenty day exchange rule (*Id.* at 11-12). Therefore, Penson claims the Panel's decision to bar MISR's evidence complied with the FINRA procedural rules.

As for rules 10316, 10303, and 10317, Penson counters that MISR has at all times been represented by counsel. MISR has been notified of all of the hearings, was allowed to attend the hearings, and did attend some of the hearings.[7] Penson claims that hearings were held to resolve

---

[7]The Court presumes that MISR's argument with regard to Rule 10317 is related to MISR's witnesses' inability to obtain travel visa's to attend the hearing which will be addressed below.

most issues and motions in the case. MISR did not address Penson's arguments in its Reply.

The Court agrees with Penson that the Panel was not guilty of misconduct and complied with its procedural rules in barring MISR's evidence for violation of the Panel's orders and the FINRA 20 day exchange rule. *See Fiero Bros., Inc. v. Southwest Sec., Inc.*, 2000 WL 510899, at *3 (S.D.N.Y. 2000) (holding that the arbitration panel did not engage in misconduct when it excluded from evidence documents that had not been exchanged within twenty days of the commencement of the hearing pursuant to NASD Rule 10321(c))[8]. Furthermore, MISR has not shown that the Panel acted in violation of Rule 10316, 10303, or 10317.

C. *The Panel Had a Reasonable Basis for Denying MISR's Motion for a Continuance.*

MISR claims that the Panel knowingly violated its code of procedure by refusing to grant MISR a continuance so that its Egyptian witnesses could obtain visa's to travel to the United States. (MISR's Mot. to Vacate 15). Under the FAA, an arbitration award may be vacated "where the arbitrators were guilty of misconduct in refusing to postpone the hearing . . ." 9 U.S.C. § 10(a). MISR also cites the Texas Civil Practice and Remedies Code § 171.088(a)(3)(B) which provides that "the court shall vacate an award if . . .the arbitrators . . . refused to postpone the hearing after a showing of sufficient cause for the postponement . . ." Penson counters that the Panel has broad discretion in deciding whether to grant an adjournment and that the Panel acted within the law when it refused MISR's last minute request to postpone the hearings based on travel constraints that it did not prove. (Penson's Reply 12). MISR did not reply to Penson's arguments.

This Court's review of the Panel's decision not to grant a continuance is "quite limited."

---

[8]NASD Rule 10321(c) was similar to FINRA Rule 10321(c).

*Painewebber, Inc. v. Barca*, 2000 WL 1071836, at *3 (N.D. Cal. 2000). "'Arbitrators are to be accorded a degree of discretion in exercising their judgment with respect to a requested postponement. Therefore, assuming there exists a reasonable basis for the arbitrators' decision not to grant a postponement, the Court will be reluctant to interfere with the award on these grounds.'" *Id.* (quoting *Fairchild & Co. Inc. v. Richmond, F & P R. Co.*, 516 F. Supp. 1305, 1314-15 (D.D.C. 1981)). In *Barca*, a party requested a 90 day continuance one week before the hearing claiming "very sorrowful physical and medical problems." *Id.* at *1. The court concluded that no misconduct had occurred based on the fact that the party received notice of the hearing date more than two months in advance but did not request an extension until the week before the hearing. *Id.* at *3. The party also supported his request with a vague claim of medical problems and did not explain why he delayed in requesting a postponement. *Id.*

The Court finds that the Panel had a reasonable basis for denying MISR's request for a continuance. On January 11, 2008, MISR sent a letter to FINRA requesting a postponement of the January 21 hearing because "we have been advised by the MISR principals that due to Egyptian American travel restrictions, it will take up to eight weeks for them to get appropriate documentation and Visa's to attend any hearing." (Def.'s Ex. 13). The Panel had set the January hearing date on June 12, 2007 (MISR's Mot. to Vacate 9; Def.'s Ex. 8). Similar to *Barca*, MISR had seven months notice of the hearing and plenty of time to obtain travel visa's. Furthermore, as in *Barca*, MISR waited until ten days before the hearing to request a postponement. "This is not an instance in which a last moment emergency or medical condition necessitated the postponement, rather" MISR's should have known of the travel restrictions at the time the hearing was scheduled and delayed in obtaining the proper documents and in moving for a postponement. *Shamah v. Schweiger*, 21 F.

Supp. 2d 208, 214 (E.D.N.Y. 1998). Accordingly, the Panel's denial of the motion to continue was reasonable and is not grounds for vacating the award. The Court will now consider MISR's final argument.

D.   *The Panel Did Not Exceed its Scope of Authority by Awarding Attorney's Fees Incurred in the Arbitration Proceeding, the Federal Court Proceedings, and the Actions in Egypt.*

Finally, MISR contends that the Panel exceeded the scope of its authority by awarding attorneys fees for matters outside the arbitration. (MISR's Mot. to Vacate 16). More specifically, MISR complains that the Panel awarded Penson legal fees incurred in the instant federal court action and the actions in Egypt[9]. (*Id.* at 17). MISR contends that because none of these cases were before the Panel, it has exceeded its power. (*Id.*). Penson points out that the contract between the parties provides, "The costs and expenses of collection of the debit balance and any unpaid deficiency in the accounts of the undersigned with you, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by you shall be payable to you by the undersigned." (Penson's Reply 14; Ex. A to doc. 7, § 7). Based on this provision, Penson claims that it has a claim for fees associated with all collection efforts, including those incurred in federal court and in the Egyptian courts. MISR did not address these arguments in its Reply.

The arbitration panel exceeds its powers when it acts "outside the limits of the authority granted to [it] by the agreement, such as deciding issues that have not been submitted to [it] or acting contrary to express provisions of that agreement." *Prescott v. Northlake Christian Sch.*, 141 Fed.

---

[9]According to Penson, MISR has filed lawsuits in Egypt over the same wire transfer and account balance issues. (Pl.'s Mot. for Antisuit Injunction 2). The Court granted Penson's Motion for Anti-Suit Injunction and enjoined MISR from proceeding with these Egyptian lawsuits. (doc. 39).

- 15 -

Appx. 263, 271-72 (5th Cir. 2005) (citations omitted). "A reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of arbitration." *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 402 (5th Cir. 2007 ) (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 343 (5th Cir. 2004)). The Fifth Circuit has applied the "essence test" to determine whether arbitrators have exceeded their powers. *Id.* at 404. Under that test, "the 'single question is whether the award, however arrived at, is rationally inferable from the contract.'" *Id.* (quoting *Executone Info. Sys. v. Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994)). In this case, the Panel's award included attorneys fees incurred by Penson in the arbitration proceedings, the proceedings in this court, and the proceedings in Egypt related to the collection of money owed by MISR. The Court agrees with Penson that this award is rationally inferable from the contract that provided for payment of costs and expenses of the collection of the debit balance, including attorney's fees. Because MISR has not shown circumstances that justify vacating the arbitration award, the Court **DENIES** MISR's Motion to Vacate the Award and **GRANTS** Penson's Application to Confirm the Award.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Penson's Motion to Confirm the Arbitration Award and **DENIES** MISR's Motion to Vacate the Arbitration Award. The Court **ORDERS** Penson to submit a proposed judgment to the Court within **five (5) days** of the date of this Order.

**SO ORDERED and SIGNED May 20th , 2008**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE